UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | CRIMINAL NO.: 05-CR-10088-EFH |
| RUDOLPH J. LIEDTKE and RJL SCIENCES, INC. d/b/a RJL SYSTEMS, INC., Defendants. | ) ) ) ) ) | |

**DEFENDANTS' SENTENCING MEMORANDUM AND RULE 32 OBJECTIONS**

**INTRODUCTION**

On April 19, 2005, after nearly 18 months of extensive cooperation with the government, Rudolph Liedtke came before this Court, both individually and on behalf of RJL Sciences, Inc., and accepted responsibility for his actions and pled guilty to one count of conspiracy to disseminate an adulterated computer software device (computer software that had not yet been approved by the FDA) that was used by Serono, S.A., a Swiss pharmaceutical manufacturer, and others for interpreting bioelectrical impedance analysis (BIA) test results in order to promote diagnosis of AIDS wasting and to increase sales of its AIDS wasting drug Serostim. (18 U.S.C. §371 and 21 U.S.C. §331).

A few months later, as a direct result of Mr. Liedtke's cooperation, Serono, together with its U.S. subsidiaries, agreed to pay $704 million to resolve criminal charges and civil allegations in connection with its illegal scheme to promote, market, and sell its AIDS wasting drug Serostim. According to the U.S. Department of Justice October 17, 2005 press release, this recovery was "the third largest health care fraud recovery by the

U.S., [and] also ensures that the Medicaid program and each of the state Medicaid agencies which paid for Serostim … will recoup all monies paid based on Serono's illegal activities."

Thereafter, Mr. Liedtke continued to cooperate with the government, meeting with case agents and attorneys from the Department of Justice and the U.S. Attorney Office in Massachusetts on multiple occasions, and testifying on two separate occasions before the grand jury.

As demonstrated below, a sentence of probation is appropriate and warranted under 18 U.S.C. § 3553.

## UNRESOLVED OBJECTIONS TO THE PRESENTENCE REPORT

In response to the Presentence Report, the defendants raised numerous objections. Upon review, U.S. Probation Officer Jennifer Sinclair revised some portions of the Report as reflected in the Addendum, but left others unaltered. Defendants request that the Court grant Rudolph Liedtke's objections 1 – 2, 4 – 9, and 12 – 13, and RJL Sciences' objections 1 – 2, 4 – 5, and 12, and enter an Order amending the Pre-Sentence Investigation Report accordingly.

## SENTENCING PRINCIPLES

### A. The Court Must Impose a Criminal Sentence That Comports With the Congressional Mandate of Parsimony in Sentencing

In *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Supreme Court held that the Federal Sentencing Guidelines are unconstitutional, and that the Sentencing Guidelines are merely advisory in all cases.

The result is that district courts are no longer shackled by the Sentencing Guidelines, nor are they required to leave compassion and common sense at the door to the courtroom. The Court must now impose a sentence that is ***"sufficient but not greater than necessary"*** to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a). These four purposes are set forth in Section 3553(a)(2):

    a.    Retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

    b.    Deterrence;

    c.    Incapacitation ("to protect the public from further crimes"); and

    d.    Rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another "factor" to be considered along with the others set forth in Section 3553(a) – it establishes an independent limit on the sentence that the Court may properly impose.

In determining what sentence will be minimally sufficient to comply with the requirements of Section 3553(a)(2), the Court must consider the following factors:

    (1)    "The nature and circumstances of the offense and the history and characteristics of the defendant";

    (2)    "The kinds of sentence available";

    (3)    The guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) Guideline range;

    (4)    The need to avoid unwarranted sentencing disparity; and

    (5)    The need to provide restitution where applicable. 18 U.S.C. §3553(a)(1), (3)-(7).

Neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. *However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence that is not greater than necessary.* The Supreme Court recently re-iterated that the overarching goal of federal sentencing is to "impose a sentence sufficient, but not greater than necessary." *Kimbrough v. United States,* 552 U.S. ___, 128 S.Ct. 558, 570 (2007).

### B. The Sentencing Guidelines Are Not Presumptively Reasonable And The Court Must Make An Individualized Assessment Based Upon The Facts And Circumstances

The Supreme Court has recently held that a sentencing court cannot presume the guideline range reasonable, but rather must make an individualized assessment based upon the facts presented in connection with both the guideline range and 18 U.S.C. 3553. *Gall v. United States*, 552 U.S. ___, 128 S.Ct. 586, 590 (2007). Indeed, The Supreme Court has affirmed that a sentence outside the guidelines may be a reasonable one. *Id.* at 602. While a sentencing court is required to consider the sentencing guideline range, it must also take into account the sentencing factors in 18 U.S.C. §3553(a), leaving it free to reject a guideline sentence after due consideration of all the §3553(a) factors. *Kimbrough v. United States*, 552 U.S.__, 128 U.S. 558, 570 (2007); *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 867 (2007).

A sentencing court properly may consider arguments that the guideline range fails to adequately reflect the §3553(a) considerations. *Rita v. United States*, 551 U.S. ___, 127 S.Ct. 2456, 2465 (2007). Indeed, a sentencing court may even vary from the guideline sentence based upon policy considerations, including disagreements with the guidelines. *Kimbrough, supra* at 128 S.Ct. 577.

4

In terms of sentences outside the guidelines, the Supreme Court in *Gall* specifically rejected "an appellate rule that requires 'extraordinary' circumstances to justify" such sentences. *Gall*, *supra*, at 595. The Court also rejected "the use of a rigid mathematical formula that uses the percentage of a departure as a standard for determining the strength of the justifications required for a specific range." *Id.*

In the present case, the nature and circumstances of the offense, Rudolph Liedtke's history, characteristics and family circumstances, the available sentencing alternatives, as well as the need to avoid unwarranted sentencing disparity demonstrate that a sentence of probation is warranted and appropriate.

**A SENTENCE OF PROBATION SATISFIES THE GOALS OF FEDERAL CRIMINAL SENTENCING, COMPORTS WITH THE MANDATE OF PARSIMONY, AND IS APPROPRIATE IN THE PRESENT CASE**

**A.   A Downward Departure And Non-Custodial Sentence Is Appropriate Where, As In The Present Case, A Custodial Sentence Would Impose An Extraordinary Hardship On The Business Owned By The Defendant**

Courts have recognized that a downward departure and/or non-custodial sentence is proper when imprisoning the defendant would have an extraordinary negative effect on non-culpable employees or a business.

In *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995) the Court upheld a downward departure and resulting non-custodial sentence where imprisoning the defendant, a small business owner, would have had a negative effect on the business and the employees. The Court affirmed a downward departure from an offense level 11 and a sentence of two years probation, conditioned on six months home confinement, community service, and a fine. *See also*, *United States v. Kloda*, 133 F.Supp.2d 345

(S.D.N.Y. 2001)(needs of business and impact on employees factor in downward departure citing *Milikowsky* and Sentencing Guidelines § 5K2.0.).

Rudolph Liedtke began RJL Systems in 1979.  RJL Systems ("RJL") is and has been engaged in the manufacture and sale of medical devices, principally devices which utilize Bioelectrical Impedance Analysis ("BIA"), to measure the degree to which a low level electrical current encounters "impedance" passing through the human body and thereby measures "resistance" and "reactance". The resistance and reactance measurements obtained through the use of the BIA medical device are used to estimate the body composition of individual humans. Estimates of body composition are computed by inserting the resistance and reactance measurements into various prediction equations.

To say that the company started "in his basement" would not be an exaggeration. As the Court is aware, RJL continues to run on a shoestring and has required Mr. Liedtke on occasion to loan the company money to avoid bankruptcy.  Mr. Liedtke is both the business arm and the product development arm of the company.  Without Mr. Liedtke, the business collapses. Besides Mr. Liedtke, RJL employs six other individuals whose families depend upon the company for their livelihood, and their health care and dental benefits.  If Mr. Liedtke is incarcerated, RJL will cease to exist and these employees will by necessity lose their jobs.

Under these circumstances, a downward departure or variance to a sentence of probation, or other non-custodial sentence is appropriate and warranted.

### B. Defendant's Extraordinary Cooperation And Substantial Assistance To The Government Far Exceeds That Provided In The Typical Case And Warrants A Sentence Of Probation

Beginning in the Fall of 2003, Mr. Liedtke began cooperating with the agents and attorneys responsible for this case. Mr. Leidtke was debriefed in both Detroit and Boston on at least four separate occasions before his guilty plea – these would include debriefings in November, 2003; December, 2003; and two debriefings in February, 2005. During these meetings he met with the agents and attorneys. And on at least one occasion, at the request of the government attorneys, he met with the government's computer expert. In addition, Mr. Liedtke provided access to thousands of pages of documents and computer material. At all times, it was made known to Mr. Liedtke and his counsel that his cooperation was to be used for, and was essential to the government's investigation and anticipated indictment of Serono and its international affiliates.

Indeed, the charges (felony as opposed to misdemeanor) and the timing of Mr. Liedtke's plea were based on the government's insistence that these measures were vital to the success of its case against Serono. Mr. Liedtke and his counsel were repeatedly told that his actions would amount to substantial assistance and the Rule 11 Agreement expressly provided for a 5K.1 departure.

Mr. Liedtke's assistance proved value beyond the imagination of the government. As a direct result of his assistance, the government negotiated a plea agreement with Serono in which the company disgorged over $700 million – the third largest health care fraud recovery in the history of the United States. (See October 17, 2005 USDOJ Press Release appended as Exhibit A). Needless to say, the government attorneys working

with Mr. Liedtke were ecstatic, and repeatedly emphasized to Mr. Liedtke's counsel how valuable Liedtke's assistance had been in obtaining the plea with Serono.

Thereafter, the government continued to insist that Mr. Liedtke cooperate with the government attorneys and investigators in their on-going investigations. This Rudy did willingly. Mr. Liedtke was debriefed on three different occasions in October, 2006 and once in December, 2006. In addition, he testified before the grand jury on two separate occasions.

The many adjournments of the sentencing date have been due in whole or in part to the government's request that Mr. Liedtke be available for additional grand jury or trial appearances. Mr. Liedtke has always agreed to testify at grand jury or trial *even after* the responsible AUSA informed counsel that the U.S. Attorney's Office would not be making a 5K.1 departure motion as contemplated by the parties in the Rule 11 Agreement due to the reasons set forth in the Government's Supplemental Submission Re: Defendant's Post-Plea Conduct.

While the defendant cannot force the government to make a 5K.1 motion, the nature and extent of his cooperation is still relevant and important in determining a sentence under 18 U.S.C. §3553. In *United States v. Fernandez*, 443 F. 3d 19(2d Cir.) *cert. denied*, 127 S. Ct. 192 (2006) the Second Circuit held that, after Booker, "a sentencing judge may take 'non-5K cooperation' into account when considering the § 3553(a) factors." *Id.* at 35.

Moreover, the Eighth Circuit has held that, after *Booker*, courts must consider cooperation without a government motion, to correct unwarranted sentencing disparity

between co-defendants. See, *United States v. Krutsinger*, 449 F.3d 827 (8th Cir. 2006); *United States v. Lazenby*, 439 F.3d 928 (8th Cir. 2006).

Under the totality of the circumstances presented in the instant case, even if the government refuses to file a 5K.1 motion, the extent and nature of the defendant's cooperation and the substantial, indeed overwhelming, nature of the assistance warrants a downward variance and a sentence of probation or other non-custodial sentence.

### C. A Sentence Of Probation Is Warranted To Avoid Unwarranted And Impermissible Disparities Among Defendants Who Engaged In Similar Conduct

It is undisputed that no Officer or Director of Serono was indicted and convicted of a felony in this case. A review of the Amended PSR reveals that many people charged in the Serono fraud scheme were found not guilty, and everyone who pled guilty was sentenced to probation.

Ironically, one of the principal masterminds of the Serono scheme to disseminate the adulterated software devices to promote sales of Serono's AIDS drug Serostim was Norma Muurahainen, M.D., Ph.D, the Director of Serono Labratories, Inc. Mr. Liedtke provided substantial information to the government concerning Dr. Muurahainen's activities and involvement.

Incredibly, Dr. Muurahainen was only recently charged with three misdemeanors! (See June 19, 2008 USAO Press Release appended as Exhibit B). She pled guilty to these misdemeanor counts in July.

Under the circumstances, a downward variance and a sentence of probation is appropriate "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a) (6).

### D. Defendant's Personal And Family Circumstances Warrant A Downward Variance And A Sentence of Probation

Mr. Liedtke is virtually the sole financial support for his family. His 67 year old wife recently lost her job and is recovering from total hip replacement surgery. Due to the economy in Michigan and her surgery, she is only able to work part time in a clerical capacity for the local historical society.

Tragically, Mr. Liedtke's son Michael was stricken with brain cancer. Due to the size, configuration, and location of the tumor, much of the mass was inoperable. Michael, now 33 years old, has been undergoing chemo and radiation therapy in an attempt to halt the spread of the tumor. During both the pre-op and post-operative period, Michael was required to live at his parent's house. While now living outside the home, Michael must remain in the Detroit metropolitan area, and may be required to again move in with his parents if the course of treatment is not successful.

Given Mr. Liedtke's age, the nature of the crime, and all of the relevant circumstances, it becomes clear that a sentence of probation as originally contemplated in the Rule 11 Agreement is appropriate, and well serves the legal mandate for proportionality. A sentence of probation provides just punishment and promotes respect for the law given the nature and circumstances of the underlying case. Such a sentence also provides sufficient protection to the public.

### CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court consider the above information, and sentence Rudolph Liedtke to a term of probation, and the RJL corporation as originally contemplated by the Rule 11 Agreement.

Respectfully submitted,

  /s/  Scott P. Lopez
Scott P. Lopez
Law Office of Scott P. Lopez
One Commercial Wharf West
Boston, MA 02110
617-742-5700
Fax: 617-742-5715
Email: lopez@lopezlaw.com

and

Robert M. Kalec
Dean & Fulkerson, P.C.
801 W. Big Beaver Road, 5th Floor
Troy, MI 48084
(248) 362-1300
Email: rkalec@dflaw.com

Dated: September 19, 2008

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 19, 2008.

  /s/ Scott P. Lopez
Scott P. Lopez